UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEREMY D. O.,[1] | |
| Petitioner, | Case No. 1:20-cv-00403-CWD |
| v. | **MEMORANDUM DECISION AND ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[2] | |
| Respondent. | |

**INTRODUCTION**

Petitioner brought this matter for judicial review of Respondent's denial of his application for a period of disability and disability insurance benefits. (Dkt. 1.) The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record (AR). For the reasons set forth below, the Court will remand this matter to the Commissioner for further proceedings consistent with the Court's analysis.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

On August 8, 2018, Petitioner protectively filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act. He alleges a disability onset date of January 11, 2017. (AR 13.) Petitioner's application was denied upon initial review and on reconsideration. (AR 13.) A hearing was conducted by Administrative Law Judge (ALJ) Christopher Inama on January 22, 2020, at which the ALJ heard testimony from Petitioner and a vocational expert. (AR 13.)

On February 5, 2020, the ALJ issued a written decision finding Petitioner was not under a disability from January 11, 2017, through the date of the written decision, and therefore determined Petitioner is not disabled. (AR 15, 25.) Petitioner timely requested review by the Appeals Council, which denied his request on June 15, 2020. (AR 1 – 6.)

Petitioner timely appealed this final decision to the Court on August 14, 2020. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g). At the time of the alleged disability onset date of January 11, 2017, Petitioner was thirty-eight years of age. (AR 24.) Petitioner is a high school graduate and worked as an aviation mechanic and as an aviation production controller in the United States Marine Corps until his discharge from military service for medical reasons in 2016. (AR 15, 42, 44, 45.) The ALJ determined Petitioner has past relevant work experience as production coordinator, airframe mechanic, and small engine mechanic. (AR 24.)

At step two of the sequential process,[3] the ALJ determined Petitioner suffers from the following medically determinable severe impairments: status post L5-S1 fusion and osteoarthritis of left upper extremity. (AR 15.) The ALJ did not find Petitioner's mental impairments of anxiety and depression, or his irritable bowel syndrome, severe at step two. (AR 16.) At step three, the ALJ determined that Petitioner does not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (AR 19.) The ALJ next determined Petitioner retained the residual functional capacity for "light work, as defined in 20 C.F.R. § 404.1567(b), except that he can work from a seated or standing position."[4] The ALJ further imposed additional postural limitations, such as occasionally reaching overhead and avoiding concentrated exposure to extreme cold and vibrations, as well as limiting Petitioner to working indoors within 150 feet from a restroom. (AR 19.) With such an RFC, the ALJ determined Petitioner did not retain the ability to perform his past relevant work, but that he retained

---

[3] For a summary of the process, *see Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) ("The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id*. § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id*. If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)-(v).").

[4] Light work requires the ability to lift up to 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, and the ability to stand or walk, off and on, for a total of approximately 6 hours of an 8-hour workday. SSR 83-10. Sedentary work, on the other hand, requires the ability to lift no more than 10 pounds at a time, with periods of standing or walking totaling no more than 2 hours of an 8-hour workday, and sitting for a total of approximately 6 hours of an 8-hour workday. SSR 83-10.

the RFC to perform the requirements of representative occupations such as routing clerk,

ticket seller, and furniture rental consultant. (AR 25.)

## ISSUES FOR REVIEW

1.  Whether the ALJ reasonably evaluated Petitioner's subjective symptom testimony?

2.  Whether the ALJ erred in his consideration of lay witness testimony?

3.  Whether the ALJ reasonably evaluated the medical opinion evidence?

4.  Whether the ALJ's Residual Functional Capacity determination is supported by substantial evidence?

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal

error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874

F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*,

139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229 (1938)). This requires "more than a mere scintilla" of evidence. *Id*.

The Court must consider the administrative record as a whole. *Garrison v. Colvin*,

759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and

the evidence that does not support, the ALJ's conclusion. *Id*.

If the ALJ's decision is based on a rational interpretation of conflicting evidence,

the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin*., 533

F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence

presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 4**

1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id*.

Petitioner's assignments of error challenge the ALJ's step four findings regarding Petitioner's RFC, and the ALJ's step five determination that there are other jobs that exist in significant numbers in the United States that Petitioner can still perform. The Court finds Petitioner's arguments regarding his RFC persuasive, as explained below.

## DISCUSSION

At step four of the sequential evaluation, the ALJ is required to make factual findings regarding: (1) the claimant's RFC, (2) the physical and mental demands of the claimant's former employment, and (3) whether the claimant's RFC permits him to return to previous occupations. Social Security Ruling (SSR) 82–62, 1982 WL 31386 (1982).

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The assessment of a claimant's RFC must be "based on all the relevant evidence in [the claimant's] case record." *Id. See also Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). When a claimant requests an administrative hearing, it is the duty of the ALJ to determine the claimant's RFC from the record. 20 C.F.R. § 404.1546(c). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity," and the ALJ's findings of RFC need not correspond precisely to any physician's findings. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir.2001). It is the claimant who bears the burden of proof of establishing his or her RFC. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

**MEMORANDUM DECISION AND ORDER - 5**

Here, Petitioner contends there is insufficient evidence to support the ALJ'S finding that he can perform full time light work as defined in 20 C.F.R. § 404.1567(b) and Social Security Ruling (SSR) 83–10 without significant interruption from pain, mental health symptoms, and excessive bathroom breaks, such that Petitioner would be off task greater than ten percent of each workday or absent more than two days each month. The vocational expert testified that work at the unskilled, light or sedentary exertional level would be precluded if an employee is off task greater than ten percent of each workday in excess of regularly scheduled breaks or absent more than two days each month. (AR 67 – 68.)

## 1.   **Subjective Symptom Testimony**

The ALJ considered Petitioner's subjective symptom testimony concerning his physical and mental impairments, finding his testimony did not substantiate his subjective allegations of disabling limitations. The ALJ concluded that, although Petitioner's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of his symptoms were inconsistent with normal physical examination findings, Petitioner's activities of daily living, and statements made to medical providers. (AR 22.) Petitioner argues the ALJ's conclusion is not supported by substantial evidence in the record, and is therefore erroneous.

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant

has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Trevizo*, 871 F.3d at 678 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); 20 C.F.R. § 404.1529 (Mar. 27, 2017)). When doing so, "the claimant need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 345, at 345-46 (9th Cir. 1991)).

When evaluating the intensity and persistence of symptoms, the ALJ must consider all of the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL

1119029 at *1-2.[5] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

The ALJ discussed the medical findings regarding Petitioner's back impairment, which required two micro-discectomies of the lumbar spine and ultimately a fusion in January of 2017. (AR 20.) The ALJ found some of the medical evidence supportive of Petitioner's subjective symptom testimony, such as physical examination findings

---

[5] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 679 n.5 (9th Cir. 2017).

indicating Petitioner ambulated with a cane, had limited range of motion of the lumbar

spine, walked with an antalgic gait, and had diminished deep tendon reflexes.

The ALJ next discussed the evidence undermining Petitioner's complaints. (AR 20

– 21.) Specifically, the ALJ noted Petitioner treated his back impairment with

medication, steroid injections, and physical therapy, and examination findings status post

fusion in December of 2017 revealed normal range of motion, normal deep tendon

reflexes, and full motor strength of the bilateral lower extremities. Later, between April

2018 and August 2019, Dr. Ryan David found Petitioner had full range of motion and

intact sensation, and no neurological abnormalities. The ALJ noted also that Dr.

Severson's examination notes from February 2019 and January 2020 revealed Petitioner

had normal motor strength of the bilateral lower extremities and no tenderness of the

lumbar paraspinal muscles And last, the ALJ noted Petitioner reported little to no

instances of low back pain during physical therapy sessions between May 2019 and

August 2019.

As for Petitioner's reported activities and statements regarding the same to

medical providers, the ALJ characterized Petitioner's activities as "robust." (AR 21.) The

ALJ noted Petitioner prepared meals, walked to get around, cared for his children, played

games on his phone, performed household chores and yardwork, shopped in stores, drove

a motor vehicle, and went fishing every month. (AR 21.) The ALJ remarked also that

Petitioner reported to medical providers that he engaged in woodworking activities,

worked in his shop, traveled, laid bricks for a firepit, went fishing, worked on his cars,

went hunting, and engaged in yard work. (AR 21.) The ALJ determined this evidence

**MEMORANDUM DECISION AND ORDER - 9**

supported a finding that Petitioner could engage in full time work at the light exertional level, which requires the ability to stand or walk, off and on, for a total of approximately 6 hours in an 8-hour workday, with sitting allowed intermittently during the remaining time. SSR 83-10.

Upon review of the record, the Court finds the ALJ's conclusions are not supported by the record and fail to provide both clear and convincing reasons for rejecting Petitioner's subjective complaints. First, the medical evidence, when considered as a whole, does not clearly indicate a capacity to perform a range of work at the light exertional level, and the ALJ failed to explain what evidence convincingly indicates Petitioner retained the RFC to do so. Second, the ALJ's assessment of Petitioner's daily activities is not based upon a fair assessment of the record.

Looking first at the medical records the ALJ indicated support an RFC for light work, it is true Dr. Dalrymple released Petitioner back to full duty three months post lumbar fusion, on April 26, 2017. (AR 711.) However, the consultative examination performed on December 1, 2017, by Dr. Sant, a specialist in physical medicine and rehabilitation, is equivocal. (AR 736 – 742.) The ALJ cites certain portions of Dr. Sant's examination findings, on the one hand, as supportive of Petitioner's subjective complaints, such as Dr. Sant's findings of limited range of motion in the lumbar spine and antalgic gait, but turns and points to Petitioner's ability to squat, get up from his chair, and get onto the examination table unassisted as undermining Petitioner's subjective pain complaints. (AR 20, 21, 739, 741.) What the ALJ fails to reconcile is Dr. Sant's observation of Petitioner's antalgic gait favoring the right knee, difficulty walking,

and Dr. Sant's recommendation that Petitioner avoid prolonged standing or walking, with the ALJ's conclusion that Petitioner can fulfill the standing and walking requirements of light work. (AR 741 – 742.)

Petitioner's physical therapy records from April 4 through August of 2019, similarly do not unequivocally demonstrate the absence of back pain, as the ALJ suggests they do. (AR 21, 916 - 969.) The ALJ states that Petitioner reported "little to no instances of lower back pain" during physical therapy. (AR 21.) However, Petitioner was referred to physical therapy due to right side and thoracic spine pain and stiffness, which reportedly limited Petitioner's quality of sleep and his ability to lift and exercise. (AR 969.) Examination on April 4, 2019, revealed limited range of motion of the lumbar spine with pain at end range. (AR 696.) Petitioner sought treatment approximately 1 – 2 times each week during this time period when he completed therapeutic exercises, manual manipulation, IASTM, and e-stim.

Initially, Petitioner complained of sharp pains down both legs, that his right leg hurt "almost all of the time," and that the pain was "debilitating." (AR 963.) Petitioner reported improvement in his pain symptoms on May 9, 2019, but reported also that yardwork exacerbated pain symptoms, requiring a day to subside, and that he experienced lumbar pain while walking. (AR 955.) Treatment notes from May 23, 2019, indicated improvement as well, but Petitioner still complained of lumbar pain and ongoing limitations. (AR 948.) Treatment notes from June 4, 2019, indicate soreness, fatigue with prescribed therapeutic exercise, and that Petitioner needed a break during the therapy session. (AR 942.) On June 18, 2019, Petitioner reported foot pain and numbness. (AR

934.)

By July 2, 2019, Petitioner reportedly did not have "too much discomfort," and the physical therapist noted improved tolerance to therapeutic exercises. (AR 931.) On July 9, 2019, Petitioner reported "85% functionality," and the therapist noted Petitioner had been making gains, although Petitioner still reported discomfort between sessions and soreness following sessions. (AR 928.) Petitioner reported "no back pain since waking up this morning" on July 11, 2019, but he also reported a flareup the day before and after his last physical therapy treatment, with pain originating in his low back radiating to his toes. (AR 926.) In other words, treatment notes and Petitioner's statements to his physical therapist do not convincingly establish that Petitioner reported "little to no instances of lower back pain." (AR 21.)[6]

The ALJ points to treatment notes by Dr. David, which he represents indicate that, between April 2018 and August 2019, Dr. David found Petitioner exhibited a full range of motion and intact sensation of the bilateral lower extremities with a normal unassisted gait. (AR 21.) But it appears that Dr. David was treating Petitioner primarily for GERD and symptoms of eosinophilic esophagitis, as well as depression, and not necessarily for orthopedic complaints. (AR 1223, 1189.) Further, the ALJ cites one page out of Dr. David's treatment records as support for his broad statement, which is a treatment note from April 5, 2018, where Petitioner is noted as "com[ing] to the clinic to establish care."

---

[6] Records do show improvement in pain symptoms, but the ALJ failed to specifically discuss how Petitioner's symptom improvements would support a finding of an RFC for sustained, full-time work at the light exertional level.

(AR 1223 – 24.)

The same selective treatment is afforded to Dr. Severson's records, with the ALJ citing one treatment note from February of 2019 and a second from January of 2020 to support his finding that Petitioner's records reflected he had normal motor strength of the bilateral lower extremities and no tenderness of the lumbar paraspinal muscles. (AR 21.) However, the ALJ seemingly overlooked that, on December 4, 2019, Dr. Severson, a pain management specialist, diagnosed Petitioner with sacroiliac joint disfunction and performed a sacroiliac joint injection that same date under intraoperative fluoroscopy. (AR 1188.)

The ALJ cannot simply pick isolated instances from Petitioner's medical records to support a conclusion that Petitioner's impairments do not seriously affect his ability to function in the workplace. *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). Rather, Petitioner's treatment records must be viewed as a whole, and in light of the overall diagnostic record. *Id.*, 246 F.3d 1195, 1205 (9th Cir. 2001) (citing *Kellough v. Heckler*, 785 F.2d 1147, 1153 (4th Cir.1986) ("'Feels well' and 'normal activity' must be read in context; the claimant has established that she suffered a severe cardiac impairment in 1975. A note entered in November 1975, just one month before she was hospitalized for open heart surgery, also stated that she 'feels well.' Kellough testified without contradiction that her 'normal activity' following her surgery was very limited."). The Court cannot confidently conclude that, when read in full and in context, Petitioner's treatment notes and course of treatment for his back pain support the ALJ's conclusion Petitioner could tolerate the standing and walking requirements of light work.

**MEMORANDUM DECISION AND ORDER - 13**

As for Petitioner's testimony and statements to medical providers concerning his activities, the ALJ's characterization of these activities as "robust" does not make them so. The record reflects that Petitioner watches television for the better part of each day, "sees his kids" off to school, and that his meal preparation is limited to sandwiches and microwave dinners. (AR 267-275.) Yardwork consists of operating a ride on mower every two weeks, and he reports shopping in stores 1-2 times a week for thirty minutes each time. While he reportedly goes fishing 1-2 times a month, there is no evidence that this activity involves prolonged walking or standing, and fishing can be enjoyed while sitting in a chair. Petitioner reported being able to drive, but only on a limited basis. (AR 737.)

The ALJ relied upon Petitioner's ability to travel as a reason for undermining Petitioner's statements about his pain. However, traveling for Petitioner involved one trip to Waco, Texas, in or about November of 2019, to move his father's family to Boise. (AR 1110.) The only other time Petitioner traveled was to move his family from North Carolina to Boise some time prior to 2018. (AR 1288.) There is no indication in the record that Petitioner traveled for pleasure or traveled at all other than the two trips to move his family and extended family to Boise.

A closer look at the statements made to medical providers reveals one report on May 16, 2019, of laying brick for a fire pit, which activity reportedly caused pain in his spine, sciatic pain on his right side, and soreness in his right hip. (AR 953.) He reported to Dr. Ryan David on February 14, 2019, that he had worked in his shop, but after having done so, he complained of pain in his thoracic spine. (AR 1216.) Dr. David's examination

findings revealed pain in Petitioner's upper back, and numbness in his fingers and lower legs. (AR 1216 – 1217.)

The ALJ also mischaracterized the statement Petitioner made to Heather Bergstrom, LCSW, in November of 2019 regarding his hobbies. (AR 21, 1113.) Petitioner was asked about hobbies he liked to do, and he mentioned working on cars, hunting, and shooting. However, there is no indication anywhere in the record that Petitioner engaged in any of these hobbies, or that reflects the frequency he engaged in them. He did report fishing, once or twice a month. Bergstrom's note indicated that "most exercise is yardwork a few times a week," and that Petitioner he reported having difficulty doing that yardwork due to back and joint pain. (AR 1113.)[7]

In other words, put in context, Petitioner's activities are hardly "robust," and any time he reported doing activities that might equate to the physical exertion requirements of light work, Petitioner complained of an increase in pain. Without an explanation of how these activities, which themselves caused Petitioner to experience increased pain symptoms, translate to the ability to maintain full-time employment at the light exertional level, the Court cannot sustain the ALJ's adverse findings regarding Petitioner's subjective symptom testimony.

---

[7] Bergstrom's note that Petitioner reported difficulty performing yardwork due to back and joint pain is consistent with Petitioner's statements to his physical therapist between April of 2018 and August of 2019. For instance, on May 23, 2019, Petitioner reported stiffness and soreness after working in his yard. (AR 948.)

**MEMORANDUM DECISION AND ORDER - 15**

2.      **Lay Witness Testimony**

Petitioner's wife, Carie Olson, completed an adult function report on October 5, 2018. (AR 314 – 315.) Ms. Olson's report indicated she has known Petitioner for twelve years, and she recounted his struggles with back pain and his resulting surgeries, including the lumbar fusion in 2017. (AR 314.) She stated she has observed her husband in extreme pain, and that he has experienced loss of feeling in his legs and scrotum, has difficulty getting dressed, and difficulty walking. (AR 314.) She also described the manifestations of Petitioner's diverticulitis resulting in removal of his sigmoid colon. She described Petitioner's bowel movements as "an emergency," and that they cannot travel because of the concern about finding a bathroom and the possibility of having to stop on the side of the road. She indicated she witnessed instances where Petitioner defecated on himself, even at home. The third medical problem Ms. Olson described as impacting Petitioner is eosinophilic esophagitis, which she says causes Petitioner "to have trouble swallowing properly…[and] to throw up when he eats at times." (AR 315.) Finally, Ms. Olson expressed her observations of Petitioner's demeanor. She described him as once being fun loving, outgoing, and active, but that his medical conditions and his previous military service have taken a toll such that he is "a miserable human being." (AR 315.)

The ALJ did not comment upon Ms. Olson's report at all. (AR 23.) Rather, the ALJ stated: "Pursuant to 404.1520c(d) we are not required to articulate how we considered evidence from non-medical sources using the requirements in paragraphs (a)-(c) in that section. Even so, I did review this evidence, along with all other evidence in the claim, before reaching the conclusions described in this decision." (AR 23.)

**MEMORANDUM DECISION AND ORDER - 16**

The 2017 regulations affected the consideration of evidence from nonmedical sources. It did not, however, eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting them. *Joseph M. R. v. Comm'r of Soc. Sec.*, 3:18-cv-01779, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019). 20 C.F.R. §§ 404.1529(c)(1) and 416.929(c)(1) state that, in "evaluating the intensity and persistence of symptoms," the ALJ must "consider all of the available evidence from…medical sources and nonmedical sources about how [a claimant's] symptoms affect [him]." 20 C.F.R. § 404.1520c, in contrast, sets forth how the ALJ is to consider and articulate medical opinions and prior administrative medical findings, and describes factors to be considered when evaluating medical opinions.

Although subsection (d) of 20 C.F.R. § 404.1520c states the Commissioner is "not required to articulate how we consider evidence from nonmedical sources," it does not end there. Rather, it provides that the ALJ is not required to provide that articulation "using the requirements in subparagraphs (a) – (c)" for evaluating medical opinions.[8] *Jerri F. v. Kijakazi*, No. 1:20-4037-RMG-SVH, 2021 WL 3362227, at *14 (D. S.C. July 29, 2021), *report and recommendation adopted*, No. CV 1:20-4037-RMG, 2021 WL 3396230 (D. S.C. Aug. 3, 2021). "If ALJs were no longer required to provide any articulation as to how they considered lay witness statements, the additional language would be superfluous. In addition, 20 C.F.R. § 404.1529(c) and SSR 16-3p have not been

---

[8] Ms. Olson did state she was a United States Navy Corpsman for 20 years (a medic). (AR 314.) But she did not treat Petitioner, and the statements recounted above do not qualify as medical opinions, nor do they constitute a conclusion concerning Petitioner's ability to perform work related tasks.

**MEMORANDUM DECISION AND ORDER - 17**

amended, and both suggest that lay witness statements are among the relevant evidence."
*Id.*

The Ninth Circuit considers "lay testimony as to a claimant's symptoms or how an impairment affects ability to work…competent evidence…and therefore [it] cannot be disregarded without comment." *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919. When rejecting third party statements which are similar in nature to Petitioner's statements, the ALJ may cite the same reasons used by the ALJ in rejecting Petitioner's statement. *See Valentine v. Comm'r Soc. Sec. Admin*., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

Respondent does not address the change in the law, but appears to concede that the "germane" standard continues to apply to nonmedical source statements when evaluating applications filed on or after March 27, 2017. (Dkt. 22 at 8 – 9.) Respondent argues that, since Ms. Olson's assertions are substantially similar to Petitioner's complaints, the ALJ's reasons for rejecting the later apply with equal force to the lay witness statement. The Court rejects Respondent's argument, as explained below.

First, Ms. Olson supplied additional observations beyond Petitioner's subjective pain complaints, commenting not only on his back pain but also on the effects of Petitioner's gastrointestinal and esophageal conditions. The ALJ did not comment upon these conditions other than to conclude, at step two, that Petitioner's irritable bowel

**MEMORANDUM DECISION AND ORDER - 18**

syndrome causes only mild symptoms, although the ALJ did include in the RFC the provision that Petitioner work within 150 feet from a restroom. (AR 16.) However, the ALJ did not analyze Ms. Olson's comments about the frequency and unpredictability of Petitioner's bowel movements in light of the vocational expert's testimony that an employer would not tolerate more than 10% of time off task each workday outside of scheduled breaks.

And second, while the Court can uphold an ALJ's decision to reject a third-party family member's testimony for the same reasons given for rejection of the petitioner's complaints, *Valentine*, 574 F.3d at 694, the Court cannot affirm the ALJ on a ground upon which he did not rely, *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The ALJ did not provide a legally sufficient reason for failing to analyze Ms. Olson's statements, and it is not for the Court to supply one. The Court is not persuaded that the boilerplate statement that the ALJ "reviewed this evidence" before reaching his conclusion is sufficient to demonstrate the ALJ considered Ms. Olson's statement without a more specific reference to it. *See* 20 C.F.R. § 404.1545(a)(3) ("We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.").

Where, as here, the ALJ's error lies in a failure to discuss competent lay testimony favorable to the claimant, the Court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination. *Stout v. Comm'r*, 454 F.3d 1050, 1055

(9th Cir. 2006). Here, the ALJ's decision to discount Petitioner's subjective symptom testimony materially impacted his decision. (AR 21 – 22.) And, the ALJ's decision failed to consider Ms. Olson's testimony supporting Petitioner's complaints of pain, and Petitioner's functional limitations due to his gastrointestinal condition.

The Court cannot determine with certainty that a reasonable ALJ, giving consideration to Ms. Olson's testimony, would have reached the same disability determination. Because the ALJ must assess a claimant's RFC "based on all the relevant evidence in [the] case record," the ALJ's failure to address the lay witness statement renders his decision unsupported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(1).

## 3.    Medical Opinions

Petitioner contends the ALJ failed to properly evaluate the medical opinions of essentially all the medical providers who rendered one. Petitioner first contends the ALJ's conclusion that the opinions of state agency physicians Martin Seidenfeld, Ph.D., and Barney Grenspan, Ph.D., were "very persuasive" lacked analysis concerning how the record supported that conclusion. Petitioner contends the ALJ simply summarily dismissed the mental health opinions rendered by Petitioner's treating providers for the same reason he found the state agency physicians' opinions very persuasive.

Likewise, Petitioner asserts the ALJ's determination that the opinions of state agency physicians Robert Vestal, M.D., and Leslie Arnold, M.D. concerning Petitioner's physical capabilities were "persuasive," lacked analysis and support in the record. Petitioner contends the ALJ provided no analysis or explanation concerning the

significance of the records relied upon by the state agency physicians, and dismissed the opinions of Petitioner's treating physicians without sufficient analysis.

Finally, Petitioner contends it was error for the ALJ to fail to mention or consider the medical opinion of Dr. Tammy Hay, who evaluated Petitioner's physical function upon discharge from the Marine Corps.

### A.    Legal Standard

The Commissioner recently revised the regulations applicable to the evaluation of medical evidence for disability applications filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). The new regulations changed how the Commissioner evaluates medical opinions and prior administrative medical findings by eliminating the use of the term "treating source," as well as what is customarily known as the treating source or treating physician rule. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the regulations now provide that the Commissioner "will not defer or give any specific evidentiary weight...to any medical opinion(s)...including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Under the revised regulations, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources according to the following factors: supportability; consistency; relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examinations); specialization; and other factors such as the medical source's familiarity

**MEMORANDUM DECISION AND ORDER - 21**

with other evidence in the record or with disability program requirements. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The ALJ's duty to articulate a rational for each factor varies. 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

Supportability and consistency are the most important factors and, therefore, the ALJ must explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The supportability factor looks inward at the medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or his medical opinion(s)…, the more persuasive the medical opinions…will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion(s)…is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)…will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

The ALJ need only address the remining factors - treatment relationship, specialization, and any other factors - when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. §§ 404.1520c(b)(2)-(3); 416.920c(b)(2)-(3) (Where "two or more medical opinions…about the same issue are both equally well-supported…and consistent with the record…but are not exactly the same."). The ALJ may address multiple opinions from a single medical source in one analysis. 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1) (explaining that "voluminous case records" necessitate source-level articulation).

**MEMORANDUM DECISION AND ORDER - 22**

Because Petitioner's application was filed after March 27, 2017, the application is subject to the revised regulations. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82 (2005); *see, e.g., Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld unless 'they exceeded the Secretary's authority [or] are arbitrary and capricious.'"). Accordingly, the Court applies the revised regulations here.

Under the revised regulations, the ALJ is required to "articulate…how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). "The 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Carmen Claudia S. v. Saul*, 2021 WL 2920614, at *8 (C.D. Cal. July 9, 2021) (quoting *Robert S. v. Saul*, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021)). "In sum, the Commissioner must explain his reasoning and specifically address how he considered the supportability and consistency of the opinion, and his reasoning must be free from legal error and supported by substantial evidence." *Id.* (quoting *Titus L. S. v. Saul*, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021)) (citations omitted). With these regulations and considerations in mind, the Court proceeds to its analysis.

## B.    Mental Health Opinions

On November 9, 2017, Dr. Brad Levitt, Psy.D., conducted a mental status examination and psychological evaluation of Petitioner upon referral from the Social Security Administration. (AR 730.) Based upon a comprehensive social and medical

history interview, as well as the administration of objective tests, Dr. Levitt's preliminary

diagnostic impression was posttraumatic stress disorder and depressive disorder due to

pain and other medical conditions, with depressive features. (AR 733.) In Dr. Levitt's

opinion, Petitioner's depressed mood, in combination with anxiety related to PTSD, "will

likely impact his ability to function adaptively on a job over time in a consistent

manner….He is likely to have low levels of motivation and energy…poor job

performance, and high levels of absenteeism. These effects are likely to wax and wane to

some degree over time…." (AR 733.)

Courtney Combe, PA-C, provided a statement dated July 29, 2019, indicating she

had been treating Petitioner since March 8, 2018, and had been providing medication

management every 3 to 6 months. (AR 915.) Combe indicated her current diagnoses are

generalized anxiety disorder; major depressive disorder, recurrent episode, mild; and

post-traumatic stress disorder. Combe opined that Petitioner struggles "daily with anxiety

and depression…[and] chronic pain and gastrointestinal issues…." In her opinion,

Petitioner struggles with controlling his anxiety and PTSD symptoms, and because of his

physical and mental illness "would have difficulty finding and keeping employment."

Heather Bergstrom, LCSW, provided counseling services to Petitioner between

November 27, 2019, and December 17, 2019. (AR 1104.) She conducted a

comprehensive intake evaluation on November 27, 2019, concluding that Petitioner "has

difficulty working because he has trouble dealing with people. He has anger issues that

sometimes negatively impact his life. He has back and joint pain. He has had difficulty

eating due to some GI issues…He has trouble with organization due to ADHD." (AR

**MEMORANDUM DECISION AND ORDER - 24**

1113.) Based upon Petitioner's reported symptoms, she assessed generalized anxiety disorder and major depressive disorder. Progress notes dated December 17, 2019, document difficulty concentrating, impaired memory, anxious mood, and intact insight. (AR 1105.)

Dr. Martin Seidenfeld reviewed the record and provided an opinion dated October 17, 2018, for the Department of Disability Services upon initial consideration. (AR 76 - 77.) He considered Petitioner's symptoms from depression and anxiety to be mild or nonexistent. In his opinion, Petitioner's psychological impairments were "non-severe" based upon a review of Petitioner's initial psychiatric intake assessment of March 8, 2018, from Courtney Combe; a record dated April 5, 2018, from St. Luke's medical center wherein Petitioner reported his mood was "better;" and Petitioner's function report describing his activities. (AR 76 – 77.)

Dr. Greenspan reviewed the record and provided an opinion dated December 31, 2018, for the Department of Disability Services upon reconsideration. (AR 89.) Relying upon Dr. Seidenfeld's prior review, including the same records used to support Dr. Seidenfeld's opinions, Dr. Greenspan assessed Petitioner's psychological impairments as non-severe. In support of his opinion, Dr. Greenspan noted that Petitioner alleged no change in conditions and presented no new medical evidence upon reconsideration. (AR 89.)

The ALJ found that Petitioner's mental impairments of depression and anxiety are medically determinable, but not severe, at step two. In doing so, he considered the opinions of Drs. Seidenfeld and Greenspan "very persuasive" because they reasonably

relied upon the normal mental status examination findings by Combe, and Petitioner's "vast" activities of daily living and his statements to medical providers. (AR 17 – 18.) He then in turn found the opinions of Combe, Levitt, and Bergstrom unpersuasive for the same reasons. (AR 18.) He included no mental health limitations in the RFC and did not discuss the opinions further at step four.

The Court finds the ALJ did not properly apply the regulations applicable to the evaluation of medical opinions. There is no indication the ALJ based his opinion on the factors enumerated in 20 C.F.R. § 404.1520c. Rather, the reasoning employed by the ALJ is entirely devoid of any analysis. Instead, the ALJ simply points to the fact that the state agency reviewing physicians provided a reason that, absent context, could be legally sufficient in the abstract, but provides no analysis of the record. For instance, the ALJ indicates he finds Seidenfeld's and Greenspan's opinions regarding Petitioner's adaptability and ability to interact with others persuasive, because "these are supported by their rationales. For instance, Drs. Seidenfeld and Greenspan relied upon the normal mental status examination findings by PA-C Combe and the claimant's activities of daily living." (AR 17 – 18.) The ALJ then conclusorily states the opinions are consistent with Petitioner's activities of daily living.

The Court finds the ALJ erroneously failed to address the supportability and consistency factors in any meaningful way when finding the opinions of Petitioner's treating physicians and the state agency consulting physician unpersuasive. First, Dr. Seidenfeld and Dr. Greenspan cited to two medical records to support their conclusions. The ALJ did not discuss how their opinions were consistent with the medical evidence as

a whole. There was no attempt to explain why the state agency physicians' opinions were more persuasive when they were based upon citation to precisely two medical records, as opposed to the opinions of Petitioner's treating providers and the consultative examiner, each of whom conducted a detailed interview of Petitioner, administered objective tests, and evaluated Petitioner's statements and medical history.

Nor did the ALJ appropriately apply the consistency factor, which compares the medical opinion to other evidence in the record. Based upon the Court's findings of error regarding the ALJ's assessment of Petitioner's subjective symptom testimony and complete disregard of corroborating lay witness testimony, this aspect of the ALJ's analysis is not supported by substantial evidence in the record.

Further, when assessing RFC, the ALJ must consider the limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. SSR 96-8p (1996); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). Although a non-severe impairment, standing alone, may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim. SSR 96-8p.

Thus, even though the ALJ may have properly concluded Petitioner's mental impairments were not severe at step two, the ALJ did not discuss the impact, if any, of Petitioner's medically determinable mental impairments when determining the RFC. This is concerning when Petitioner's treating provider, Courtney Combe, PA-C, indicated in her assessment that Petitioner's depression and anger problems are worsened by his pain and other symptoms. (AR 915.)

**MEMORANDUM DECISION AND ORDER - 27**

### C.    Medical Opinions

Dr. Michael Sant conducted a consultative physical examination of Petitioner on December 1, 2017, for the Department of Disability Services. (AR 736.) He set forth Petitioner's treatment history, symptoms, and social habits. (AR 736 – 738.) Physical examination results yielded reduced range of motion of the left shoulder and lumbar region, with subjective discomfort experienced during lumber extension, flexion, and lateral flexion. (AR 738 – 739.) Dr. Sant's examination revealed normal strength, normal muscle bulk and tone, and decreased sensation to light touch along the medial aspect of Petitioner's left hand and into the fourth and fifth digits of the left hand. (AR 740 – 741.) Dr. Sant observed Petitioner's gait to be antalgic, favoring the right knee, with the use of a cane, and that Petitioner had difficulty walking. (AR 741.) However, Dr. Sant remarked Petitioner was able to perform a full squat, get up from a chair, dress/undress, and get on and off the examination table unassisted. (AR 741.)

Based upon Petitioner's physical history and Dr. Sant's examination, Dr. Sant reached the opinion that Petitioner would be able to walk "short functional distances with the use of a single point cane, but would have difficulty with prolonged standing or walking…he would not tolerate…prolonged standing or walking due to his back issues…Specifically, with regard to the spine, he would not tolerate repetitive bending, twisting, stooping, heavy pushing or pulling, or prolonged sitting or standing…He would require frequent position changes as needed…." (AR 741 – 742.)

Ryan David, D.O., Petitioner's treating provider since May 5, 2018, submitted a medical assessment of Petitioner's physical abilities dated January 2, 2020. (AR 1181.) In

**MEMORANDUM DECISION AND ORDER - 28**

his opinion, Petitioner could regularly work two hours each day, and would be absent six days each month due to interference from medical impairments or treatment. (AR 1178.) Dr. David opined that Petitioner's ability to walk was impaired due to chronic back pain, which would require frequent position changes, and that Petitioner would be unable to walk more than one hour in an eight-hour workday. (AR 1178.) He indicated this assessment was based upon the finings of Petitioner's MRI dated July 18, 2019, which revealed bilateral foraminal stenosis at the L4/S1 level, directly above the previous fusion. (AR 1178.) As for sitting, Dr. David opinioned Petitioner could sit up to one hour in an eight-hour workday, requiring frequent positional changes as needed due to pain. (AR 1179.) He also indicated that motions that increase weight on the lower lumbar spine, such as stooping and crouching, should be avoided by Petitioner due to the fusion, and that Petitioner should not push or pull greater than 10 pounds. (AR 1179 – 1180.)

On January 10, 2017, Dr. Tammy Hay conducted a comprehensive physical examination and assessment of Petitioner for the Department of Veterans Affairs. (AR 360 – 370.) Based upon her examination findings, Dr. Hay noted Petitioner had difficulty working as a mechanic because Petitioner's left wrist pain and numbness in his fingers "makes it difficult to torque tools and lift. He should avoid physical labor and is best suited for sedentary work." (AR 357.) Her examination findings noted Petitioner used a cane occasionally to steady his gait and off load his back pain. (AR 356.) Examination findings revealed also that Petitioner exhibited numbness in his left leg surrounding a gunshot wound, which she noted occurred in a left femoral and sciatic distribution. (AR 350.) She noted that Petitioner exhibited moderate lower extremity pain and severe

numbness on the right and left attributable to peripheral nerve conditions. (AR 348.)

Upon initial consideration, Dr. Robert Vestal reviewed the record and determined Petitioner retained the physical RFC to perform work at the light exertional level, with occasional postural changes as needed and ready access to a restroom. (AR 80.) He based his conclusion primarily upon three medical records dated April 26, 2017, April 5, 2018, and August 1, 2018, as well as Petitioner's description of his physical activities in the adult function report. (AR 80.) Dr. Vestal concluded Petitioner could stand and/or walk up to six hours in an eight-hour workday, and sit for a total of six hours in an eight-hour workday. (AR 78.) Upon reconsideration, Dr. Leslie Arnold concurred with Dr. Vestal's assessment. (AR 93.)

The ALJ found that the administrative findings of Drs. Vestal and Arnold were persuasive and supported by their reliance upon Petitioner's history of back surgery, continuing back pain, and "robust" activities of daily living. (AR 22.) The ALJ also found the opinions consistent and supported by reasonable explanation, without further comment. (AR 23.) He found Dr. Sant's opinions regarding the need for frequent position changes and Dr. David's opinions regarding Petitioner's walking, standing, and lifting limitations unpersuasive, because they are inconsistent with Petitioner's "vast activities of daily living" and statements to medical providers. (AR 23.) The ALJ did not mention Dr. Hay's examination findings or her opinions.

Here again, the Court finds the ALJ failed to provide any meaningful analysis of the medical opinion evidence. Drs. Vestal and Arnold relied upon four medical records, one of which was an annual checkup where Petitioner reportedly felt "well," and another

was a single record indicating Petitioner had full range of motion of both upper and lower extremities. (AR 92 – 93, 752, 754.) The ALJ failed to explain how the opinions of Drs. Vestal and Arnold are supported by these limited medical records given the independent examination findings of Dr. Sant, who conducted objective tests measuring Petitioner's range of motion, and Dr. David's assessment based upon his evaluation of Petitioner's MRI findings and his treatment history. Notably, a review of the medical records relied upon by Drs. Vestal and Arnold indicate Petitioner did not receive a comprehensive examination, and that the treating physician simply conducted a review of systems to conclude Petitioner was "well," without any specific findings.

Second, as discussed previously, the Court finds error regarding the ALJ's characterization of Petitioner's activities of daily living, and his failure to consider lay witness testimony supporting Petitioner's claims of physical and mental limitations. Accordingly, the ALJ's finding that the opinions of Drs. Vestal and Arnold are persuasive based upon Petitioner's "robust" activities of daily living is not supported by substantial evidence in the record as a whole.

Last, the Court finds the ALJ's failure to consider Dr. Hay's opinions that Petitioner was limited to sedentary work, and the examination results underlying her opinions, erroneous. Importantly, Petitioner does not contend the ALJ was required to defer to the VA rating, which under new regulations directs the inquiry to the underlying evidence and not to the rating itself. 20 C.F.R. § 404.1520b(c) (explicitly prevents an ALJ from analyzing a VA rating decision). But, the ALJ must consider "all of the supporting evidence underlying the other governmental agency or nongovernmental

**MEMORANDUM DECISION AND ORDER - 31**

entity's decision [received] as evidence in your claim in accordance with §
04.1513(a)(1)-(4)." 20 C.F.R. § 404.1504. Therefore, the ALJ is required to consider all
the evidence underlying the VA's decision—at least, all the evidence that was presented
to the VA and also presented to the Social Security Administration, and to provide
analysis of any significant, probative evidence contained in the VA records. 20 C.F.R. §
404.1504; *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (An ALJ "may not
reject 'significant probative evidence' without explanation.").

Here, Dr. Hay conducted a comprehensive medical examination and provided an
analysis independent of the VA rating. Yet, the ALJ simply ignored it, even though Dr.
Hay's opinions regarding Petitioner's ability to walk, stand, and sit are congruous with
those of Drs. Sant and David, and based upon objective medical tests measuring
Petitioner's range of motion and neuropathy.

The Court therefore finds that the ALJ's decision is not supported by substantial
evidence. The ALJ improperly evaluated the findings, diagnoses, and objective results
from Petitioner's physicians, and did not provide legally adequate reasoning for finding
the state agency physicians' opinions persuasive in light of the record as a whole.

**4.     Residual Functional Capacity**

Here, the ALJ determined that Petitioner had the RFC to perform light work with
some postural limitations. However, this determination is flawed because, as explained,
the ALJ improperly evaluated the medical opinion evidence, Petitioner's testimony, and
lay witness testimony. Accordingly, the ALJ's reliance on the vocational expert's opinion
that an individual with the aforementioned residual functional capacity could perform the

work of a routing clerk, ticket seller, and furniture rental consultant was error. *Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1166 (9th Cir. 2008); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

## CONCLUSION

Based on the above, the Court finds the Commissioner's decision is not supported by substantial evidence and does not reflect application of the correct legal standards. The medical opinions discussed above do not all support a finding that Petitioner has the residual functional capacity to perform full time work at the light exertional level, and the ALJ did not provide legally sufficient reasons for finding the state agency physicians' opinions more persuasive based upon the record as a whole. Further, the ALJ did not provide clear and convincing reasons for rejecting Petitioner's subjective complaints, nor did the ALJ adequately consider lay testimony corroborating Petitioner's subjective complaints. Petitioner has therefore met his burden of establishing harmful error in support of his request for remand.

The Court does not find this case appropriate for a remand for an award of benefits, however. Here, it is unclear from the record whether the ALJ would have been required to find Petitioner disabled. Despite finding Petitioner's mental impairments were medically determinable, the ALJ did not discuss the impact, if any, of Petitioner's mental impairments on Petitioner's RFC. Nor did the ALJ adequately analyze the medical and other evidence of record to determine if Petitioner could engage in work at the sedentary exertion level. For these reasons, remand is appropriate.

**MEMORANDUM DECISION AND ORDER - 33**

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      The Petition for Review (Dkt. 1) is **GRANTED**;

2)      This action will be **REMANDED** to the Commissioner for further proceedings consistent with this opinion; and

3)      This Remand is considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: December 01, 2021

Candy W. Dale
Chief U.S. Magistrate Judge